at all. Oral argument, 15 minutes for plaintiff, 15 minutes to be shared by defendants. Ms. Cameron for the appellant. And would you each state how much time you're reserving for rebuttal? Your Honor, I'm reserving three minutes. Okay. You may proceed. Thank you, Your Honor. May it please the court. My name is Sarah Cameron. I'm counsel for the appellant, the Estate of William Plott, through his parents, Glenn and Cassandra Plott. To begin, I would like to read directly from the March 22 order of Judge McFarland, which initially denied Wilcox's motion to dismiss. This is on page ID number 338. It's the paragraph that begins halfway down the page. It says, plaintiff now brings a breach of contract claim against Wilcox, not the United States. Plaintiff specifically alleges that Wilcox has breached its obligations under the annuity, not that the United States has. And which plaintiff claims Wilcox is obligated to pay, not the United States. Accordingly, plaintiff's claims are alleged against Wilcox, not the United States. And so this court has jurisdiction over the claims as pled. Your Honors, just as the lower court's March 22 order outlined, this is a simple breach of contract case brought by an intended third beneficiary against Wilcox. The United States is not a necessary party to the complete relief that is being sought by an intended third party beneficiary. Now, Your Honors, after this order, two years later, a new judge, Judge Hopkins, was assigned to this case in a 2024 order that's at issue in today's appeal. He dismisses this case entirely under Civil Rule 19. And his holding said, the order read, because HHS is the owner of the annuity and therefore a party to the annuity, it is a necessary and indispensable party to the lawsuit under Rule 19. This is a bright line, rigid rule that is inappropriate under Rule 19 analysis. Now, this case serves as the Sixth that the lower court's rule here that parties to a contract are automatically indispensable under Rule 19b is improper. The court should have applied the four-factor test set forth in Civil Rule 19b. And if it would have done so properly, this matter would not have been dismissed. Do you think, if you're correct, can we apply the rule ourselves or do we need to remand it for the district court to do that? You can apply the rules yourself if you look to the Second Circuit. But how can you do that given that the necessary determination, as I understand it, is a finding of fact that's reviewed for abuse of discretion. How can we do that? Yes, Your Honor, if you look to the Second Circuit's decision in CP Solutions at page 161, they consider that very question. It says, because the question of indispensability is a matter committed to the district court's discretion, ordinarily, we might vacate the judgment and remand for reconsideration, I think is what you're referring to, Your Honor. In this case, however, this is the Second Circuit, we do not believe it would be within the permissible range of choices to conclude that GE multiline is indispensable. We therefore reverse the district court's decision and remand with instructions to allow the case to proceed. Okay. Is your position that the counterclaim, has that been dismissed in the case? That has not been dismissed, Your Honor. Counterclaim is still pending? The entire case has been dismissed, yes. The court has determined that because the counterclaim also pertains to the annuity that because, as the court explained in its September 2024 order, the HHS is a party and dismissed the case entirely. I was just a little confused because there was a decision, I believe in August, that denied dismissing the counterclaim, and then there was really nothing more about that. We do have a decision in September 24th, which could be read to dismiss the entire case, but I'm not sure because we had this explicit order just a month earlier that was not dismissing the counterclaim. Your Honor, I agree with you that that creates a little bit of confusion. However, in the order at issue, it does say this case is dismissed in its entirety. So it's your position, the plaintiff's position, is that the September 24th order disposes of the counterclaim? That is correct, Your Honor. Okay. Ms. Cameron, this is Judge Cole. Yes. Do I understand Wilcox to argue that it would likely bring a claim against HHS, a claim for indemnity, and that that's one of the arguments for why HHS is a necessary party? That is certainly one of the arguments that Wilcox makes, is that if it is found liable, it will then turn to HHS with an indemnity claim. But Your Honor, the law, as it's been applied in a variety of circuits, is that just because someone may have an indemnity claim doesn't necessarily make that party indispensable. Thank you, Your Honor. Your Honors, what I find interesting and what I want to highlight for you is the fact that neither Wilcox nor the HHS really distinguishes the Culbertson case, which I think is on all fours with this matter. In that case, Your Honor, this was the same vaccine injury compensation case. The Court of Federal Claims gave compensation to the child that was injured, and in that case, directed the HHS to purchase an annuity, which it did, and they placed it in a trust. Now, in that case, just as in this case, the plaintiff argued that the trustee was not enforcing the terms of the trust. Here, just like in that case, we're saying the annuity, Wilcox, under that contract, is not following the terms of the contract. In Culbertson, the Court said that the same argument was made, and that the HHS is an indispensable party. In that case, the Court correctly highlighted, plaintiff is not seeking to reform this trust. Here, we're not seeking to reform the trust. All plaintiff was seeking in Culbertson was to the mandate of the terms of the trust, just like here. We're only seeking to enforce the mandate of the clear terms of the contract. Just so I understand, it's plaintiff's position that the insurance policy obligations are synonymous with what the obligations are of the special master's decision? When we get to the merits, Your Honor, that will be our argument, yes. If plaintiffs lose this case, would they have an ability to go to the Court of Federal Claims then to bring a case against HHS? We will not, Your Honor. I believe it is covered under NUT v. United States. I'm not sure if I do have that, Your Honor. Not v. United States. There, the Court affirmed that unless that jurisdiction is unequivocally held over the order to get the annuity, to buy the annuity, just as there was a direction here, the HHS was directed to purchase this annuity. It followed that direction. Unless there was an unequivocal language in the order saying that HHS guarantees payment, then HHS has complied with everything under that order. Therefore, there's no claim against HHS. The claim is against WILCAC for the annuity. If we were to affirm the district court here, would the plaintiffs have the ability to bring their claims in the Court of Federal Claims? No, we would not. The Court of Federal Claims would not have any jurisdiction over WILCAC. But they would over HHS. But we do not have a claim against HHS. Just as this lower court found in March of 2022, our claims are against WILCAC. HHS complied with the order by purchasing this annuity. The only party that is in breach of duties is WILCAC. HHS paid WILCAC $1.8 million for this annuity. Therefore, they are obligated to honor their contract. I think in WILCAC's brief, they take a moment to cut and paste into their brief a part of the contract. It is highlighted. This is a contract. Read it carefully. That is their obligation also. They are obligated to enforce the contract how it was written. They were given $1.8 million for this annuity contract. There's nothing special about the fact that it's a nuanced annuity. It is a contract. And this is simply a third-party beneficiary who is very clearly intended, because his name is identified in the contract, coming to the court and saying, enforce the contractual rights of this contract according to its terms. We do not believe that the United States has failed. The United States did what it was obligated to do in purchasing this annuity. The party that has failed is WILCAC because they have not made payment as they were required to do under the plain terms of this contract. In your honors, I just want to again highlight the fact that CP Solutions in the Second District provides the greatest guidance for how to deal with this. On page 14 in their footnote 7, WILCAC cites the lower decision that was reversed by the Second District. They cite that case in support of their position, saying that all the courts around the country uniformly interpret that rights afforded to a party of the contract that makes them indispensable. If you look to that case, that case was explicitly reversed by the Second Circuit, which is what this court should follow. Thank you, counsel. Thank you. Ms. Jones, you're next. Thank you very much. All right. May it please the court and your honors. My name is Sandra Jones and I'm here today. It's an honor and a privilege to present to your honors on behalf of WILCAC Life Insurance Company, which was formerly known as Continental Assurance Company. My colleague here representing the plots has made some interesting arguments against the nuance of structured settlement annuities, but part of why we're here today actually is because the lower court recognized the importance of a structured settlement annuity contract and how it works. At bottom, that's been ignored by the plot estate throughout this litigation. The important piece, I think, for your honors to appreciate is that when a structured settlement annuity is created, it is a contract between the owner and the issuer. The third party beneficiary, as it will here, was a contractual payee, which is an important role. However, it is also something that can change at the direction of the annuity owner. In this particular case, when Mr. William Plott was a young man and he was injured by a vaccine and brought a claim under the National Vaccine Compensation Program, the government agreed and there was also a judgment in place to specifically pay for Mr. Plott's expenses during his lifetime. Let me ask you this jurisdictional question about the counterclaim. Is it WILCAC's position that the counterclaim has been dismissed? That is a tricky question, your honor. We are in support of the entire matter being dismissed. The counterclaim was attendant to plaintiff's claim against WILCAC. It was on the basis of information that was provided to it by the owner, the HHS. Is it yes or no? Has the counterclaim been dismissed according to WILCAC? Yes, it has. Your time for appeal has gone. You've lost that counterclaim. Correct, your honor. The importance of where I was actually just headed is in line with what your honor just noted. When the annuity was purchased by the government, it did not discharge its obligations to the Plotts. It specifically continued to own the annuity. There's a term of art in structured settlement annuities, which were cited in our briefs from several learned treatises and also some cases, where an obligor for a structured settlement annuity is akin to the owner, and an obligor maintains the obligation under the structured settlement annuity if the issuer does not perform. The claim then would be for the owner against the issuer to compel that performance, because again, it is a contract between the owner and the issuer. Is there any position that WILCAC would be, if this case proceeded, is there any position that you would be taking with respect to interpretation of the contract that would have any impact on interpretation of the special master's decision? No. Well, to some degree, your honor. Basically, what we believe and what I think the facts show is that the annuity was supposed to be drafted, and we believe that it was, in compliance directly with the special master's decision. So it's your position that the contract is consistent with the special master's decision? Correct, your honor. The important fact, though, is that when the plots came to us and said, hey, we think you should pay some additional money under this annuity contract, we said, you know what, we're going to go to the owner and ask them if the annuity contract has fulfilled their expectations for what they purchased. What I'm trying to get at is, is there any argument that you could foresee that you would be making in this case that would be adverse to HHS's position on interpretation of the special master's decision? No. And what about the contract? So not with regard to the contract either. I believe the parties are aligned as to what the contract says, and when I say the parties, I mean the HHS and WILCAC. However, in the situation we were in, the reason why the owner has to be an indispensable party here is that it remains the obligation to pay the plots. So if the plots are trying to get additional funds, really they're trying to get it under the special master's decision. They're not trying to get it from the annuity contract, because the owner has already told us, WILCAC, that we've complied with the annuity's terms. We've issued the payments as the government expected us to issue. So your position is if the plots have a claim here, it's against HHS and the Court of Federal Claims? That is correct, your honor. We just heard they've said they don't have a claim. Right, your honor. And that's an interesting position to take. And I will say, your honor, respectfully, and I say this honestly with all due respect to Ms. Cameron and her client, they're trying to create a technical loophole to avoid... Seems like they're putting all their eggs in the basket of this case. They are. That's right. And we can't see, and I think the HHS will agree, that the HHS who owns this contract is an indispensable party. And we believe that the district court specifically undertook an analysis. And just because the order that they issued was brief, it does not mean that they did not consider four important cases that they cited to support their position, that the HHS was an indispensable party here. So the plots have taken the position that they applied a too harsh, a bright line rule, but cases that they specifically cited say exactly the opposite. So there are four cases that were cited by the district court in their opinion. These are also in our brief, but they're the Dollison case, the Clinton versus Babbitt case, the Caribbean telecommunications case, and I think the most important case that they cited, which is in-rate transfer of structured settlement payment rights by MY. We believe that these four cases were narrowly selected and tailored to the Rule 19 issues at bar. We believe that, again, the argument that the court took too rigid an approach was certainly not true. We think the court did a lot of work, actually, to find these cases. Is it Wilcox's position that if HHS, I mean, anytime a party, there's a party to a contract, it isn't necessarily an indispensable party? It's a bright line rule? Correct. We say it's not a bright line rule. We agree with that. We've said that the court didn't apply a bright line rule, that it actually undertook a Rule 19 analysis without so specifically stating that by citing to the cases that it cited, the four cases that I just read, which cite to themselves a Rule 19 analysis, that the court specifically looked at this type of contract and the facts, as were alleged by both parties, and put those together to come to the conclusion that the DHHS was an indispensable party. Ms. Jones, it's Judge Cole. I hear your argument, and I'm not being critical of the district court here. I understand that the district court did cite the cases that you've referenced. It is a pretty brief opinion. Rule 19 requires a case-by-case analysis and various factors that have to be considered. The district court's opinion just seems to be, does not set forth much analysis, really any analysis, as to why a party is necessary, HHS is necessary or not necessary, or why it's indispensable or not indispensable. As to the necessary factor, there need to be findings of fact. And we review for an abuse of discretion. And it just seems, quite frankly, a little difficult at this juncture for us to conduct that analysis with so few, if any, factual findings. And the same for the indispensable prong, which has four factors. District court possibly considered them, but it's not very clear in the order. So my concern is that it makes it very difficult for this court, in my view, to review the district court's decision when the district court did not engage with the Rule 19 analysis that we're typically accustomed to seeing and the cases seem to require. Yeah, thank you, Judge Cole. I mean, the point is well taken. Obviously, your honor is correct, right? We obviously didn't write that order. But we do believe that the case is cited, if your honors are to review them. So I'll use my last minute to show that the court did undertake that analysis. And so in the Dollison case, it was chosen specifically because it involved a plaintiff who tried to dismiss an indispensable party on a procedural issue, which is what occurred here in this case earlier, right? It's important context for your honors to know that when the DHHS was initially dismissed, it was done so voluntarily. They were originally a party at my urging because I was explaining to Ms. Cameron that the owner of an annuity is an indispensable party, as has been black letter law for structured settlement annuities since the beginning of time, that they own the contract. So they have a vested interest in that terms. Ms. Cameron chose to dismiss the DHHS. And the lower court's opinion in that regard was essentially missing some of that component when it issued that order, respectfully. The Clinton case was cited because it, under the Rule 19 premise that a party is indispensable, so that in equity and good conscience, a suit should be dismissed when an indispensable party is a part of it. But in the last six seconds, I will note the MY case was the most instructive here because it involved specifically a structured settlement annuity and the DHHS. Thank you, your honors. I appreciate your time and consideration today. Thank you, counsel.  May it please the court, Kevin Kohler on behalf of the Department of Health and Human Services. Given the government's immunity, the United States has not taken a position on the Rule 19 issue. We don't take one on appeals. That would be a waiver of your immunity if you took a position on that issue? I'm not sure it would be a waiver. I think we would have the discretion to intervene in a limited manner and not waive our sovereign immunity, but we elected not to take a position, at least under the facts of this case, as it is now. Or should we deem that not taking a position that the government does not consider it to have any adverse interest to Wilcox in this case? I don't think so, your honor. You do not think you have an adverse interest? No, I do not think the court should construe our not taking a position as us not having an adverse interest to Wilcox. What is the potential adverse interest? I think the potential adverse position to Wilcox comes if you play out the different paths the district court can take. I think at this point, we agree with Wilcox that performance has been rendered under the annuity. If a district court looked at the annuity, however, and says, well, I think the plain language of the annuity is different than what the two parties to the contract intended, I think there are two possible avenues a district court might go down. One would be to reform the contract and try and conform it to the intent of the United States and Wilcox. I think that would be appropriate. If there's a reformation, would that require, that would make you a necessary party? Our position at that point, we would most certainly be a necessary and indispensable party and the reformation cannot proceed in our absence. The other possibility is the district court could look at the situation here and say there is a mutual mistake of fact at the time the contract was entered into. Both the parties thought they were entering into a contract that was coextensive with our obligations under the vaccine judgment. It's possible district court could say, well, that was wrong and I'm going to consider rescinding the contract. At that point, I think there's definitely the possibility that Wilcox's interest would diverge from the United States. I think Wilcox might see rescission as a way out of the case. I think we would be opposed. Again, under rescission, we would be a necessary. Let's suppose we allowed the case to go forward at this point. You're saying once we got to the remedy stage, if we got to a remedy, then this issue would pop up again. I think there would be the potential for the injury to the government, yes, as you proceed along the case. It's possible the case could proceed. Is it possible for the plaintiffs to get a remedy where the issue wouldn't pop up? I think it's very difficult to see a path forward where the plaintiffs prevail in the district court without implicating a sovereign interest of the government. At the minimum, I think it would require the district court to construe the meets and bounds of the vaccine judgment. Once it does that and has to look and is construing the vaccine judgment, I think that would be infringing upon a governmental interest, both because we have an interest as the government in having these claims decided by the congressionally approved forum, which is the vaccine court. Once you get into the merits of that, I think you're infringing upon the interest, in addition to the possibility of either reforming or rescinding the contract, which again, I think under black letter law would make us necessary and indispensable. There's this potential third party claim that Wilcock had asserted against HHS that was dismissed without prejudice to go to the court of federal claims. I guess it's the government's position it will defend that lawsuit if and when it's brought, but that's not really relevant for our decision as to whether the government's a necessary and indispensable party here. That's correct, your honor. The one point I did want to touch on was with respect to the alternative forum. The government's position is that the alternative forum here is the most appropriate forum, and that would be a motion to enforce the vaccine judgment in the court of claims, which has the authority to issue and enforce such orders as needed to assure the prompt payment M&A compensation awarded. To be clear, the government would not be making any nut-type argument in the court of claims. Nut, I think, is an apposite for a couple reasons. One, it was an FTCA case. You're limited to the terms of the settlement agreement. Here, we're under the Vaccine Act. There's a broader waiver of sovereign immunity. Nut, and there's a line of cases, nut cites Massey in the court of claims, I think fundamentally deal with a different factual paradigm. In those cases, there is no dispute that the annuity or the instrument that the obligations of the payments, that if those had been performed, the plaintiff would have received what they were owed. In those cases, they went into receivership. Back to the conflict question, is there any conflict of interest between the government's position as to what the special master's decision, what it requires, and what Wilcox's position is as to that? Do you think there's any? No. I think both parties agree that the judgment and decision do not require this additional posthumous distribution. We have crafted the annuity not to provide that. What if the district court here did do something to construe what the special master's decision means? I presume if you go to the court of federal claims, they would not be bound by that ruling of the district court, or would they? I don't have an answer to that question. I have not researched that. I think our position would be at a minimum, the United States is not a party to this action, would not be bound. No non-mutual collateral. I think there would be no non-mutual collateral stop in a motion. Again, I think the appropriate forum would have to be a motion to enforce the judgment in the vaccine court. I think at that point, the special master in the court of claims would be the authoritative position to say what that judgment means. Out of time, I would just make one more point with respect to not if the court would indulge me. Plaintiff mentioned it's not clear whether there would be a guarantee under the judgment. Page 67 of the judgment, the vaccine decision, which is then enforced by the judgment, required the United States to purchase a contract that guaranteed the distribution set forth in Appendix B. If plaintiff is correct that Appendix B required this additional posthumous distribution, then we have not fulfilled the terms of the judgment because we did not purchase a contract that guaranteed that. Again, we don't think that's required under the judgment, but if we are wrong, then the proper remedy is in the court of claims to enforce the vaccine judgment. Thank you. Your Honors, thank you. I just want to quickly go to that last point. He read you directly from the order. The order was to purchase an annuity. The United States complied with that order. And what we're here today is not over that judgment. We're not asking this district court to construe that judgment. We're here under a contract. Council said this is a nuanced settlement annuity. How do you respond to the point he made about that the government would be a necessary party if you were seeking reformation or rescission? Thank you for bringing that up, Your Honor. That is not the relief that's being sought here. That would be equitable relief of reformation or rescission. That's not what we're seeking here. You're seeking just regular breach of contract? Just regular breach of contract. Court interpret this contract and enforce it according to its plain language. Even more, just because the HHS and the United States want to now, 30 years later, say, oh, we agree this wasn't what we wanted, the law protects innocent third-party beneficiaries from that. So they can't just gang up on an innocent third-party beneficiary and now, 30 years later, say this contract isn't what we thought it said. So, number one, we're not seeking reformation. No one is. The first time reformation came up was in HHS's brief. Number two, we're not seeking rescission. We have been paid under this contract for 30 years. We're just saying, make the final payment as you are required to do, as the plain language of that contract requires. And so, Your Honors, the United States is not a necessary party to us asking this court, look at this contract, which is like any other contract. They haven't cited a law that says it isn't. And we are a third-party, an innocent third-party beneficiary that expected this because this is what the plain language of the contract said. And I would just want to highlight counsel saying that the court's citation to four different cases supports the fact that it underwent the 19B analysis. If the court looks at that, at those cases, it'll find that in most of them, the courts didn't even get to a 19B analysis. For example, in Dollison, the court determined that the party could be joined, so they didn't even get to the indispensability. And counsel says, in Raid Transfer of Settlement Agreement, with their most important claim, if the court goes to that case, it'll see this case wasn't even decided on Rule 19 grounds. Thank you, Your Honor, for your time. Thank you. Thank you. Thanks to all counsel. And we will take the matter under submission. The clerk may adjourn the court.